IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| JANET M. RIFFE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09-00775 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order filed July 7, 2009, to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Presently pending before the Court are the parties cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Janet M. Riffe (hereinafter referred to as "Claimant"), filed an application for DIB on February 22, 2006 (protective filing date), alleging disability as of January 15, 2005, due to depression, loss of concentration, anxiety, osteoporosis, lyme disease, fibromyalgia, fatigue, hand and leg tremors, restless leg syndrome, lack of strength, mild scoliosis, back and knee pain, and jaw pain. (Tr. at 17, 123-25, 141, 144.) The claim was denied initially and upon reconsideration. (Tr. at 88-90, 94-96.) On January 5, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 97.) A hearing was held on April 10, 2008, before the Honorable Mark A.

O'Hara. (Tr. at 42-85.) On June 12, 2008, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 17-41.) The ALJ's decision became the final decision of the Commissioner on March 19, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) On July 6, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth

and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, January 15, 2005. (Tr. at 19, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from fibromyalgia syndrome, osteoporosis, osteoarthritis, and degenerative disc disease, the combination of which were severe impairments. (Tr. at 19, Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 36, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she should not be required to climb, balance, stoop, kneel, crouch, or crawl more than occasionally and should not be required to work in the presence of concentrations of extreme cold or vibrations.

(Tr. at 38, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as a flower arranger, sales associate and manager, hostess, and assistant manager. (Tr. at 40, Finding No. 6.) On this basis and on the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, benefits were denied. (Tr. at 40, Finding No. 7.)

3

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on September 27, 1959, and was 48 years old at the time of the administrative hearing, December 6, 2007. (Tr. at 20, 29, 97.) Claimant has a high school education and is able to communicate in English. (Tr. at 20, 29, 136.) In the past, she worked as a header operator, an assembler, a truck driver, and a golf course laborer. (Tr. at 19, 58, 129, 138-44.)

The Medical Record.

The Court has reviewed all the evidence of record, including the medical evidence, and will summarize it below as it relates to Claimant's claims.

Claimant's Challenges to the Commissioner's Decision and Defendant's Responses.

Claimant first alleges that the ALJ improperly evaluated her symptoms, including pain. (Document No. 11 at 12-14.) Specifically, she asserts that the ALJ's findings that the treatment record was limited and that Claimant was in reasonably good health, is contrary to his findings that she had severe impairments. (Id. at 13-14.) Moreover, Claimant asserts that the ALJ erred in failing to determine whether Claimant had a medical condition which could cause her alleged pain. (Id. at 14.) In response, the Commissioner contends that the ALJ specifically found that Claimant's "medically determinable impairments could reasonably be expected to produce some symptoms and limitations of the general type that has been alleged." (Document No. 12 at 11.) The Commissioner further contends that in evaluating Claimant's symptoms and pain, the ALJ specifically cited evidence that undermined Claimant's allegations of disabling impairments. (Id. at 12-13.) Thus, the Commissioner asserts that substantial evidence supports the ALJ's pain and credibility analysis and that Claimant's allegations are without merit. (Id.)

Claimant next alleges that the ALJ erred by not according great weight to the opinion of Dr. Miller, her treating physician, that her emotional instability and clinical depression precluded her from performing sedentary work. (Document No. 11 at 14-17.) The Commissioner asserts that the ALJ properly provided three main reasons for giving Dr. Miller's assessment of Claimant's alleged functional limitations less weight than the assessments of the state agency physicians. (Document No. 12 at 15-17.) First, the Commissioner asserts that the ALJ noted that Dr. Miller's opinion was inconsistent with his treatment notes, and therefore, properly discounted the opinion pursuant to 20 C.F.R. § 404.1527(c)(2), (d)(4). (Id. at 15.) Second, the Commissioner asserts that the ALJ noted that Dr. Miller's opinion was inconsistent with assessments made by other treating,

examining, and reviewing sources, including the specialists to whom Dr. Miller referred Claimant. (Id. at 15-16.) Third, and finally, the Commissioner asserts that the ALJ reasonably questioned Dr. Miller's statement that Claimant's depressive symptoms precluded sedentary work, because such symptoms generally do not produce "major exertional limitations and are not generally gauged in terms of sedentary, light, medium, or heavy work." (Id. at 16.)

Finally, Claimant alleges that the ALJ erred by not taking into account the effect of her fibromyalgia, chronic pain syndrome, tremors, and depression when he assessed Claimant's RFC and questioned the vocational expert. (Document No. 11 at 17-18.) In response, the Commissioner asserts that Claimant's arguments are without merit. (Document No. 12 at 17-19.) Regarding Claimant's fibromyalgia, the Commissioner asserts that the medical evidence demonstrated she retained full motor power, reflexes, and sensation, and that her gait and station were consistently normal. (Id. at 18.) With respect to the tremors, Drs. Miller and Hurwitz deemed them intermittent, slight, and/or benign, and that they were successfully treated. (Id.) The Commissioner notes that Dr. Miller was the only physician who assessed any limitations from the tremors. (Id.) The Commissioner further asserts that Claimant's mental status examinations failed to establish any work-related functional limitations resulting from her depression. (Id. at 18-19.) Thus, the Commissioner contends that Claimant's functional limitations from fibromyalgia did not preclude her from performing light level work. (Id. at 17-19.)

Analysis.

1. Pain and Credibility Assessment.

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that

6

reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2008); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's  subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2008).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

7

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2008).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining

8

whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15-16.) Contrary to Claimant's allegation, the ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to produce some symptoms and limitations of the general type that has been alleged." (Tr. at 39.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 39-40.) At the second step of the analysis, the ALJ concluded

"that the statements of the [C]laimant and her husband are not entirely accurate concerning the intensity, persistence, and limiting effects of these symptoms." (Tr. at 39.)

In assessing Claimant's credibility at step two, the ALJ addressed the seven factors set forth under the Regulations, as well as Claimant's and her husband's testimony. (Tr. at 39-40.) The ALJ thoroughly summarized the medical and opinion evidence of record. (Tr. at 19-36.) The ALJ summarized Claimant's reported activities to have included occasionally doing the dishes and lying down during the day to rest. (Tr. at 35, 65.) However, the ALJ found that the evidence of record failed to support such limited activities, except for the opinion of Dr. Miller, as discussed below. Dr. Hurwitz specifically found that Claimant's tremors and other conditions had not slowed her activities of daily living. Furthermore, the ALJ noted that in 2005 and 2006, the record reflected that Claimant mowed the lawn with a push mower and engaged in volunteer work. (Tr. at 39.) He opined that it appeared that Claimant "elected to retire and spend more time with her new husband and that her current lack of employment is related more to life-style choices than medical impairments." (Id.) The ALJ properly proceeded to assess the remaining factors, including the degree, severity, nature, and location of Claimant's subjective complaints; and her treatment. (Id.) Claimant reported that her physician gave her a twenty pound lifting restriction which was consistent with the ALJ's RFC assessment. (Id.) As discussed below, Claimant's neurological exams essentially were normal, and the state agency physicians' opinions were consistent with the ALJ's assessed RFC.

Accordingly, in the absence of Claimant's identifying any specific error the ALJ committed in assessing her pain and credibility, the undersigned finds that the ALJ's assessment was proper, in accordance with the Regulations, and supported by substantial evidence of record. Claimant's allegations in this regard are found to be without merit.

2. Treating Opinion.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2008).

11

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2008). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)."

Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2008). The ALJ, however, is not bound by any

13

findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The medical record reflects Claimant's treatment with Dr. Miller from June 15, 2005, through April 9, 2008. (Tr. at 295-98, 451-67.) On April 9, 2008, Dr. Miller "wrote a letter of disability endorsement indicating that Claimant was under his care for fibromyalgia, depression, cervical disc osteophyte complexes, and bilateral pulmonary emboli. (Tr. at 34, 451.) He noted that she suffered chronic radicular pain in her arm and shoulder, chronic polyarthritis, and polymyositis

pain with acute exacerbations, which were "severe and disabling." (Id.) He noted that her respiratory status was compromised secondary to the pulmonary emboli. (Id.) Dr. Miller opined that due to the cumulative disability of Claimant's medical problems, "she is unable to perform sustained gainful employment." (Id.) He further opined that Claimant was unable "to perform any job tasks requiring prolonged standing or walking and would likely be unable to stand or walk for more than two to three hours at a time." (Id.) Finally, Dr. Miller opined that Claimant's "emotional instability and clinical depression with cognitive impairment would preclude her from performing secondary work. In my opinion, [Claimant's] impairments are permanent and significant improvement in the future is unlikely." (Id.)

In his decision, the ALJ summarized Dr. Miller's treatment notes and opinion, and accorded his opinion little weight. (Tr. at 34-35, 38.) The ALJ reasoned that Dr. Miller's opinion was on an issue reserved to the Commissioner, was not supported by the longitudinal record with limited physical findings and generally routine and conservative treatment, was not supported by his own treatment notes, and was not consistent with other treating, examining, and reviewing source opinions. (Tr. at 34, 38.)

Addressing Dr. Miller's treatment notes, the records indicate that Claimant reported low back pain, low energy, hand tremors, and pain and spasming of her left arm and shoulder. (Tr. at 27.) Nevertheless, physical exams revealed that she had normal straight leg raising testing and was able to walk on her toes and heels without pain. (Tr. at 298.) ) Furthermore, Claimant discontinued her physical therapy as prescribed by Dr. Miller due to a conflict with the therapist. (Tr. at 27.) Claimant wore a brace on her left shoulder, which she obtained over the counter. (Tr. at 297.) On July 26, 2006, Dr. Miller observed a slight amount of resting tremor in both hands, but noted that

15

it was not present on August 15, 2006. (Tr. at 296-97.) However, Dr. Miller specifically noted that she had no intentional tremor or cogwheeling. (Tr. at 297.)

The other medical evidence of record reveals that Claimant, at times, rated her pain at only a level three or four out of ten, which conflicts with her allegations of constant and disabling pain. (Tr. at 276, 387.) The specialists that Claimant saw, many to whom Dr. Miller referred Claimant, failed to find that Claimant was disabled or that she had limitations as severe as those assessed by Dr. Miller. Radiology studies did not explain Claimant complaints. (Tr. at 27, 235-37.) Dr. Bili Adroniki, M.D., observed on physical exam that Claimant had normal muscle strength; chronic osteoarthritic changes of the fingers without synovitis; no pain, swelling, or limitation of motion in any joints; and no tenderness to percussion of the sacoiliac joints. (Tr. at 229.) Despite reports of intermittent hand tremors and occasional face tremor, Dr. Barrie J. Hurwitz, M.D., a neurologist, noted that neither had her handwriting worsened nor her activities slowed down. (Tr. at 28, 300.) On exam, Dr. Hurwitz noted normal sensation, that Claimant was able to balance on either leg alone, and that her gait and station were normal and steady with normal tandem walking. (Tr. at 28, 301.) Dr. Hurwitz opined that Claimant had only a mild intentional tremor. (Tr. at 28, 302.) Furthermore, Dr. Brown noted that Claimant had normal gait and station and full motor strength except when she experienced problems with her left shoulder. (Tr. at 338, 368-69.)

Though an intake worker from the SSA noted that Claimant had a severe tremor, the ALJ properly accorded little weight to the opinion for four reasons. (Tr. at 20.) First, the worker was a non-medically trained individual. (Id.) Second, the observation was made on only one occasions. (Id.) Third, the ALJ noted that Claimant most likely was nervous during the interview process. (Id.) Fourth, and finally, the ALJ noted that the worker's observations were not supported by the

16

objective medical signs or diagnostic test results, and were inconsistent with the ALJ's observations of Claimant during the administrative hearing. (Id.)

Regarding Dr. Miller's opinion that Claimant's depressive symptoms prevented her from performing any work, the ALJ noted that "depression does not generally produce major exertional limitations and are not generally gauged in terms of sedentary/light/medium/heavy work; depression and emotional factors, if severe, generally produce non-exertional limitations expressed in terms of social functioning, concentration, persistence, pace, etc." (Tr. at 34.) The undersigned notes that the medical records from Southern Highlands indicated that Claimant's GAF was compatible with only a mild to a borderline moderate to mild mental impairment. (Tr. at 33, Thus, the ALJ properly questioned Dr. Miller's opinion regarding her depressive symptoms.

Accordingly, the undersigned finds that the ALJ set forth his reasons for according little weight to the opinion of Dr. Miller, Claimant's treating physician, and that the ALJ's decision is supported by substantial evidence of record.

3. Vocational Expert Testimony.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must

include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

Claimant alleges that the ALJ failed to take into account the effect of her fibromyalgia, chronic pain syndrome, tremors, and depression when he assessed Claimant's RFC and when he questioned the VE. (Document No. 11 at 17-18.) As noted above, the ALJ found that Claimant's fibromyalgia was a severe impairment. (Tr. at 19.) As also noted above, the medical record reflected normal motor strength, reflexes, and sensation, and that Claimant's gait and station were normal. Claimant has not demonstrated any disabling effects emanating from her fibromyalgia, nor does she identify them in her brief. Regarding the hand tremors, the medical record, as discussed above, indicated that at most, the tremors were mild, did not affect her handwriting, and had not restricted her activities. Furthermore, Claimant's various physicians did not assess any limitations resulting from the tremors. Finally, regarding Claimant's depression, the medical record reflected essentially normal mental status exams, and no significant limitations resulting therefrom. The ALJ noted the medical evidence regarding these three conditions in his opinion and properly considered them in assessing Claimant's RFC.

Regarding the hypothetical question posed to the VE, the transcript of the administrative hearing reveals that the ALJ included only those limitations supported by the medical record. Claimant has failed to identify any particular limitation supported by the record, which the ALJ failed to include. The undersigned finds that as a whole, the record failed to establish any significant limitation resulting from Claimant's fibromyalgia, hand tremors, or depression. Accordingly, the undersigned finds that Claimant's argument is without merit and that the ALJ's decision in this respect is supported by substantial evidence.

18

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).  Copies of such objections shall be served on opposing parties, Senior District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to deliver a copy of the same to counsel of record.

Date: July 30, 2010.

R. Clarke VanDervort
United States Magistrate Judge

19